THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TAWANA MARIA WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 7:12-cv-00287 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL ASTRUE, | ) | By: Hon. Robert S. Ballou |
| COMMISSIONER OF SOCIAL SECURITY | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Tawana Maria Williams ("Williams") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") that Williams was not eligible for disability insurance benefits ("DIB"), 42 U.S.C. §§ 401-433. Specifically, Williams alleges the Commissioner erred by improperly assessing her credibility as to her subjective pain complaints.

This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued the issues. The case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the argument of counsel, and the applicable law. I conclude that substantial evidence supports the ALJ's assessment of Williams's credibility. Accordingly, I **RECOMMEND DENYING** Williams's Motion for Summary Judgment (Dkt. No. 12), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 18).

# I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that the claimant failed to demonstrate that he was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The plaintiff bears the burden of proving that he suffers under a "disability" as that term is interpreted under the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the

claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[1] (4) can return to her past relevant work; and if not, (5) whether he can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Secretary, Dept. of Health and Human Servs., 953 F.2d 95-96 (4th Cir. 1991).

## II.

**Social and Vocational History**

Williams was born November 22, 1962. (Administrative Record, hereinafter "R." at 36.) At all relevant times she has been a "younger person" under the regulations. See 20 C.F.R. § 404.1563(c) (defining "younger person" as a person under the age of 50). Williams started, but

---

[1] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

3

did not complete, the 12th grade. She has a GED, but no other education or training. R. 37. Williams has worked with three different employers as a customer service representative, considered sedentary and skilled work. She has also worked in aircraft support, including as a supervisor, which is considered heavy, skilled work. Williams's employment history includes work as a bank teller, as a mail carrier, and as a seamstress, each of which are considered medium, semi-skilled work. R. 37-43, 61, 198.

Williams reported in October, 2008 that she was unable to engage in any activities other than going to the restroom. R. 187. In February, 2009, Williams reported that her activities including taking her medication, attending physical therapy twice a week, watching television, lying down in the afternoon for 1-2 hours, and using the computer for 30 minutes. R. 220. At the hearing before the ALJ on October 7, 2010, Williams reported that, prior to 2009, she did dishes, picked up around the house, shopped, paid bills, walked 10-100 feet for exercise, watched television, and went to church; Williams testified that since 2009 she can engage in these activities but with limited difficulty. R. 50-51.

### Claim History

Williams filed her claim for DIB on September 26, 2008, claiming a disability onset date of September 22, 2008. R. 160. The Commissioner denied her application initially and upon reconsideration. R. 105, 108. ALJ Geraldine H. Page held a hearing on October 7, 2010, at which Williams, represented by counsel, and a vocational expert testified. R. 28-66. The ALJ denied Williams's claim on October 25, 2010. R. 10-23.

The ALJ found that Williams suffered from the severe impairments of obesity, tendonitis or a partial tear in the left shoulder, degenerative changes in the AC joint of the right shoulder, infraspinatus tendon tear, osteoarthritis in the bilateral hips, and spondylosis in the lumbar spine.

R. 13.  The ALJ found that none of these impairments, either individually or in combination, met or medically equaled a listed impairment.  R. 14.  The ALJ further found that Williams has the residual functional capacity to perform light work, limited to lifting/carrying 10 lbs frequently and 20 lbs occasionally, standing/walking for six hours in a normal eight hour work day, and sitting for six hours in a normal eight hour work day.  The ALJ also found Williams capable of occasionally climbing ramps and stairs, balancing, kneeling, crouching, and stooping.  The ALJ limited Williams to work that allowed her to avoid hazardous machinery, unprotected heights, and vibrating surfaces , and avoid climbing ladders, ropes, or scaffolds.  Finally, the ALJ found Williams should avoid all work that requires crawling.  R. 15.  The ALJ found, based on the testimony of the vocational expert, that there are significant jobs in the national economy which Williams could perform based on her age, education, work experience, and RFC, such as information/records clerk, general office clerk, and information clerk/receptionist.  As such, the ALJ concluded that Williams is not disabled.  R. 22.

Williams filed an appeal with the Social Security Administration's Appeals Council ("AC") and included two additional exhibits in her request for review.  On May 1, 2012 the AC denied Williams's request for a review of the ALJ's decision, thereby rendering it the final decision of the Commissioner.  R. 1-4.  On June 28, 2012, Williams filed her complaint in this Court seeking judicial review of the ALJ's decision (Dkt. No. 1).

### III.

**The ALJ's Credibility Assessment**

Williams raise only point of error, claiming that the ALJ improperly evaluated her complaints of pain and thus concluded that her subjective complaints were not fully credible.  Pl.'s Br. 10. Williams points to portions of the record corroborating her subjective complaints

and finally notes that her complaints are supported by substantial evidence. Pl.'s Br. 11-12 ("The plaintiff's complaints of pain have been consistent and well document" (providing record cites)) ("The medical evidence indicates that there is substantial evidence to support the limitations alleged by the plaintiff."). The issue on appeal is not whether it is plausible that a different fact finder could have drawn a different conclusion; it is not if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard—defined as more than a mere scintilla but perhaps somewhat less than a preponderance—is met, I cannot recommend reversing the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). Evidence contrary to the ALJ's decision is largely immaterial to the question before me. So long as there is substantial evidence to support what the ALJ did conclude, the fact there is other evidence to support an alternative conclusion is irrelevant. To find otherwise would necessarily require courts to reweigh the evidence of record.

Furthermore, credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). Here, the ALJ's credibility determination is supported by substantial evidence. It should not be disturbed. See Johnson v. Barnhart, 434 F.3d 650, 658-59 (4th Cir. 2005) (per curiam) (citing Craig, 76 F.3d at 589).

Legal Standard

The Fourth Circuit has recognized that pain, independent from any physical limitations, may render an individual incapable of working, but noted that "allegations of pain and other subjective symptoms, without more, are insufficient." Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996) (citing Myers v. Califano, 611 F.2d 980, 983 (4th Cir.1980)). The Fourth Circuit has recognized a two-step process to determine whether a claimant has been rendered disabled by pain. Hines v. Barnhart, 453 F.3d 559, 564-66 (4th Cir. 2006). First, the claimant must establish with objective medical evidence that she suffers from an impairment that could reasonably be expected to cause pain. Id.; see also Craig, 76 F.3d at 594. "It is only *after* a claimant has met [this] threshold obligation . . . that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." Craig, 76 F.3d at 595 (citing 20 C.F.R. §§ 416.929(c)(1), 404.1529(c)(1)) (emphasis in original). During this second step, the claimant may rely entirely on subjective evidence, but objective evidence remains relevant. Hines, 453 F.3d at 565. In other words, the absence of objective medical evidence of the intensity, severity, degree, or functional effect of pain is not determinative. Id. A claimant's allegations about his pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Craig, 76 F.3d at 595 (citing 20 C.F.R. § 416.929(c)(4)). Furthermore, the claimant cannot make a showing of disability merely by demonstrating that she experiences pain. Green v. Astrue, 3:10CV764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (citing Hays, 907 F.2d at 1457–58) ("An individual does not have to be pain-free in order to be found 'not disabled.'"), report and recommendation adopted, 3:10CV764, 2011 WL 5599421 (E.D. Va. Nov. 17, 2011).

The pain must be so severe as to prevent the claimant from performing any substantial gainful activity.

Here, the ALJ found that Williams's medically determinable impairments could reasonably be expected to cause her alleged symptoms. R. 18. However, the ALJ found that the statements by Williams concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible. R. 18-19. The ALJ arrived at the conclusion that Williams is not fully credible based on an analysis of three factors—her conservative medical treatment, her work history, and her daily activities. R. 19. Substantial evidence supports the ALJ's conclusion.

Medical Treatment for Pain

Williams has had pain in her left shoulder, her lower back, and her right shoulder. However, the medical record contains substantial evidence that these issues have resolved or been adequately managed with relatively conservative medical treatment.

### Left Shoulder Pain

On December 28, 2007, she reported to Dr. Uzma Ali complaining of left shoulder pain that had been going on for three weeks. R. 251. Dr. Ali found that the shoulder was tender in the anterior upon physical examination. Williams was "absolutely unable to carry out the range of motion." An x-ray showed no arthritis. R. 251. Dr. Ali diagnosed Williams with left shoulder pain, mostly like rotator cuff tendonits, injected the shoulder joint, and prescribed Lortab. R. 251-52.

Williams followed up with Dr. Ali on January 14, 2008, still complaining of left shoulder pain and still unable to carry out the range of motion. R. 248. Dr. Ali found the shoulder to be minimally swollen, warm, and tender anteriorly and superiorly, and Dr. Ali noted that the x-ray

from Williams's prior visit was "absolutely normal." He referred her to orthopedics and refilled her Lortab prescription. R. 248.

Williams saw Dr. James Carr, an orthopedist, on January 16, 2008. Upon examination, Dr. Carr found her left shoulder to be acutely tender with dramatically weak external rotation. He diagnosed her with chronic left shoulder pain. Because Williams had already had conservative treatment and was experiencing severe symptoms, Dr. Carr ordered an MRI. R. 246. The MRI was taken on January 24, 2008, and indicated either a partial tear or tendonitis of the distal supraspinatus tendon. R. 283.

In the extensive medical records following the MRI on January 24, 2008, Williams does not again complain of left shoulder pain. At the hearing before the ALJ on October 7, 2010, Williams stated that she has problems with her left shoulder "every now and then." R. 46.

Low Back Pain

Williams reported to the emergency room on September 7, 2008 with a new complaint of low back pain. R. 265. A physical exam revealed Williams to be in moderate distress; her back was non-tender, but had a decreased range of motion. She was diagnosed with acute low back pain and acute right sciatica, was prescribed Prednisone, and was discharged home with her condition improved. R. 270.

Williams again reported to the emergency room for low back pain on September 9, 2008. R. 296. She received Morphine injections, R. 301, 303, and was discharged with instructions to take her medication as directed. R. 299. Williams returned to the emergency room once again on September 13, 2008, again complaining of low back pain. R. 306. A CT scan revealed significant sclerosis around the right sacroiliac joint with mild sclerosis around the left sacroiliac joint, moderate sclerosis involving the pubic symphysis without significant joint erosions, and

9

moderate sclerosis along the posterior elements of L4 and L5 with moderate bilateral facet joint anthropahty L4-L5 and L5-S1. R. 315. Williams was given Dilaudid injections, R. 317, and discharge home that day. R. 306.

Williams visited the emergency room for back pain one final time that month on September 20, 2008. R. 321. She also complained of pain and numbness from her back down her right leg to her foot. Williams reported that the medication she had received previously "helped as long as [she] took them," but that she had run out of the medication. R. 322.

On September 24, 2008, Williams presented to Dr. Durga Mekala to establish care as her primary care physician. R. 370. Williams reported constant and excruciating back pain, rating it 10/10. R. 373. Dr. Mekala prescribed Flexeril and physical therapy. R. 373. Williams reported to the emergency room again on October 9, 2009 with complaints of low back pain. R. 333. She was given Toradol injection and Percocet, and was discharged home within two hours of her arrival with a prescription for Naproxen. R. 332, 337.

Williams did well in physical therapy through October and November of 2008. R. 355, 361. When Williams followed up with Dr. Mekala for her chronic lower back on November 20, 2008, she reported that her pain was under control with her present medication regimen. R. 385. She also reported her pain was 2-3 out of 10, that it was better since starting her physical therapy. Dr. Mekala continued Williams on Flexeril, Tramdaol, and physical therapy. R. 387.

Williams saw Dr. Mekala for a follow up on February 19, 2009. She reported her back pain was getting better. She also asked if anything could be done for her pain without medication. R. 751. Dr. Mekala continued her physical therapy and Tramadol prescription, and referred her to an orthopedist for a possible sacroiliac joint injection. R. 752. Williams received refills of her Cyclobenzaprine and Tramadol prescriptions for her lower back pain on April 30,

2009. R. 756-57. She underwent right sacroiliac joint therapeutic injections in September and October 2009. R. 520, 522. On November 29, 2009, Williams denied having any joint or back pain. R. 429. The medical record does not contain any further complaints from Williams of back pain.[2]

Right Shoulder Pain

Williams injured her right shoulder on March 29, 2010, while playing Wii baseball with her grandson. She reported to the emergency room the next day in tears, complaining of a throbbing pain rated at 10/10. R. 528. The emergency room physician's physical examination revealed decreased range of motion, tenderness, bony tenderness, and pain in the right shoulder. R. 529. Williams was diagnosed with a right shoulder sprain/strain and possible rotator cuff injury. R. 530. X-rays of the right shoulder showed the joint relationships, osseous architecture and density, and surrounding soft tissues were all normal in appearance. R. 551. Williams was discharged on Percocet and Naproxen. R. 455.

Williams saw Dr. Robin Olsen for a follow up on her shoulder pain on April 1, 2010. R. 454. She reported that the pain was sharp, burning, and throbbing, rating it 6/10, and was diagnosed with a right shoulder strain. She was prescribed Naproxen, Hydrocodone, and Cyclobenzaprine. R. 454-55. That same day, Dr. Tian Xia wrote a letter clearing Williams to return to work on April 5, 2010. R. 458-59. On April 5, 2010 Williams returned for a follow up on her right arm and shoulder pain and was seen by Ms. Donna Warner, a Certified Registered Nurse Practitioner. R. 459. Nurse Warner assessed Williams as having a rotator cuff injury. Williams received a prescription for Lortab and Nasprosyn and a referral to an orthopedist. R.

---

[2] Williams did experience 3-4 minutes of severe cramping in her right flank on December 7, 2009. This was described by Dr. Robert Barksdale as a "new problem," while low back pain was listed in Williams's past medical history. R. 537-38.

11

461. Nurse Warner also composed a letter stating that Williams would need to be out for at least two weeks until further information and tests were obtained to determine a treatment plan. R. 465.

On April 14, 2010, Williams saw Dr. Mekala complaining of "almost unbearable" shoulder pain. R. 478. Dr. Mekala instructed Williams to keep her orthopedic appointments and continued on her current medication regimen. R. 480-81. An MRI on April 16, 2010 revealed right shoulder revealed a partial thickness tear of the supraspinatus tendon, a near full thickness/full thickness tear of the intraspinatus tendon, degenerative subchondral cysts in the glenoid, and mild AC joint degenerative change. R. 516.

William saw Dr. Cesar J. Bravo, an orthopedist, on May 17, 2010, reporting the she had constant, dull, achy, and throbbing right shoulder pain, which physical therapy aggravated, but medication helped somewhat. R. 487. Dr. Bravo reviewed the plaintiff's x-rays and MRI and noted that they showed AC joint arthritis and degenerative cuff changes respectively. He diagnosed Williams with right shoulder pain and rotator cuff syndrome, performed a right shoulder cortisone injection, and prescribed physical therapy for range of motion and progressive rotor cuff strengthening. R. 489. Dr. Bravo released Williams to return to work as of May 18, 2010 with a lifting restriction of no more than 10 lbs. R. 493.

On June 10, 2010, Christine Poush, Williams's physical therapist, noted that Williams had demonstrated steady progress as evidenced by her decreased pain overall and her improving range of motion in her right shoulder. R. 577. On June 28, 2010 Williams reported to Dr. Bravo for a follow up of her right shoulder pain. R. 498. She stated that her pain was constant, dull, achy, and throbbing and that the cortisone injection at her last appointment was helpful for only a couple of days. R. 498. Dr. Bravo's examination revealed that Williams was tender in all planes

of motion as well as with palpation. R. 501. He diagnosed Williams with right shoulder rotator cuff syndrome, impingement and acromioclavicular joint arthritis. R. 501. After a discussion of her options, Williams elected to undergo surgery, specifically a right shoulder diagnostic arthroscopy. R. 502.

Williams was discharged from physical therapy on July 14, 2010 as she was preparing to undergo surgery. R. 558. After an abnormal EKG, William's surgery was cancelled. R. 717, 720. Dr. M. Ayoub Mirza examined Williams on July 30, 2010 and ordered an echocardiogram. Dr. Mirza indicated that unless the echocardiogram revealed something very abnormal, Willaims would be fine to proceed with the shoulder surgery. R. 717.

Williams saw Dr. Bravo again on August 4, 2010, complaining of continued constant pain in her right shoulder. R. 720. Dr. Bravo diagnosed Williams with right shoulder rotator cuff syndrome and impingement and noted the she would be undergoing right shoulder diagnostic arthroscopy. R. 724. Dr. Mirza cleared Williams for surgery on August 13, 2010. R. 743. On September 21, 2010, Williams reported for surgery. She reported that she was continuing to experience right shoulder pain that was as constant, dull, achy, and throbbing, that physical therapy made the pain worse, and that her medication was somewhat helpful. R. 777. An MRI revealed degenerative cuff changes. R 781. Williams then underwent a successful right shoulder arthroscopy. R. 782-85. The medical record contains no indication of post-surgical complications.

The ALJ not only noted the fact that Williams reported no acute post-surgical complications, but also that her treatment generally was largely routine and conservative. R. 19. As the outline of the medical record demonstrates, there is substantial evidence to support this conclusion. Likewise, there is substantial evidence to support the ALJ's conclusion that the

13

treatment Williams received has been relatively effective in controlling her symptoms. R. 19. The record contains no complaints of left shoulder pain after January, 2008 and no right shoulder complaints post-surgery. As to low back pain, Williams reported on November 20, 2008 that such pain was under control with her prescribed medication regimen. R. 385. There is thus ample evidence to support the ALJ's conclusion regarding the nature of the treatment Williams received.

<u>Work History</u>

Additionally, the ALJ correctly notes that 20 CFR 404.1529(c)(3) incorporates a claimant's work history into the Commissioner's evaluation of the intensity and persistence of a claimant's pain symptoms. R. 19. While at Step Two the ALJ found that the work Williams performed during the relevant time period did not rise to the level of substantial gainful activity, the ALJ noted that Williams has acquired income both from work activity and from unemployment benefits after her allegedly onset date. R. 12, 19. The ALJ also cited to the hearing, at which Williams testified that, although she receives some special accommodations such as extra rest and bathroom breaks, R. 56-58, she attempts to work forty hours a week as a customer sales representative at a call center accepting inbound calls, making outbound calls, entering data, typing, dealing with customers, performing special projects, and lifting up to 10 lbs. R. 19, 37-38. Williams also testified that she did not take her prescribed pain medications while at this job. R. 38-39. Based on her earnings records from the relevant period and hearing testimony regarding her current work activities, there is substantial evidence to support the ALJ's conclusion that Williams's credibility regarding her complaints of pain is not supported by her significant work history during her alleged disability. R. 19.

Daily Activities

Finally, as to daily activities, the ALJ noted that the limitations claimed by Williams cannot be verified with any reasonable degree of certainty and, that even assuming her daily activities were as limited as she alleged, it would be difficult to attribute these limitation to her medical condition(s) based on the medical evidence. R. 19. The ALJ's conclusion is supported not only by the conservative treatment Williams received, but also by the opinions of the State agency physicians. Dr. Michael Hartman found that Williams has the residual functional capacity to occasionally lift/carry 20 lbs and frequently lift/carry 10 lbs, to stand/walk about six hours in an eight hour workday, to sit about six hours in an eight hour workday, and to occasionally climb ramps/stairs, never climb ladders/ropes/scaffolds, frequently balance, frequently stoop, occasionally kneel or crawl. Dr. Hartman further found Williams is limited in her left upper extremities in pushing/pulling, and in left overhead reaching, and should avoid concentrated exposure to hazards (machinery, heights, etc.). R. 79-83. Dr. Richard Surrusco arrived at nearly an identical conclusion, expect he found Williams frequently—as opposed to occasionally—climb ramps/stairs, and occasionally—as opposed to frequently—stoop. R. 93-95. The ALJ further notes, correctly, that the record does not contain any opinions from treating or examining physicians indicating that Williams has greater limitations. R. 19.

In sum, the ALJ cited to evidence in the record sufficient, under the substantial evidence standard of review, to support the conclusion that Williams was not fully credible in her subjective pain complaints—her conservative treatment, her work history, and a lack of limitations in daily activities supported by the record. In her argument alleging error, Williams does not dispute, or even discuss, the extensive evidence cited by the ALJ. Instead, Williams

15

simply notes the existence of other evidence in the record which could support an alternative conclusion. Pl.'s Br. 11-12.

The issue before this court is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard—defined as more than a mere scintilla but perhaps somewhat less than a preponderance—is met, I cannot recommend reversing the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). Furthermore, credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). As it is not this court's task to reweigh the evidence and make its own credibility determination, I must recommend against remand.

## RECOMMENDED DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **GRANTING** the Commissioner's motion for summary judgment, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any

adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

                                                         Enter: August 5, 2013

                                                      *Robert S. Ballou*
                                                      Robert S. Ballou
                                                      United States Magistrate Judge